**DEAN et al.**

v.

**ALLIED OIL CO.**

No. 3114.

Court of Civil Appeals of Texas.

Waco.

Oct. 22, 1953.

Rehearing Denied Nov. 12, 1953.

an attorney to prepare the note and agreement and defendants signed the note as President and Secretary-Treasurer of the Debco Corporation for and on behalf of the Debco Corporation. The note was in the principal amount of $30,483.48, provided for interest at 6% and provided for an additional 10% upon principal and accrued interest as attorney's fees if the note be not paid at maturity and be placed in the hands of an attorney for collection. After the signatures and acknowledgment of Dean and Evans on behalf of the Debco Corporation there appeared: *"For value received, we, J. L. Dean or Wesley D. Evans or both of us, do hereby personally bind ourselves, our heirs and assigns, and do further guarantee the payment of the above mentioned note and do hereby promise to pay Allied Oil Company or order $30,483.48 or such amount that remains to be paid at maturity, or at any time thereafter, with interest at the rate of 6% per annum, until paid, waiving demand, notice of non payment and protest.*

Address 5505 Hiway 9    /S/  J. L. Dean
J. L. Dean
Address 1824 Elizabeth    /S/  Wesley D. Evans
Wesley D. Evans."

The Debco Corporation defaulted on the note. Plaintiff filed suit jointly against the Debco Corporation, and the defendants individually. Thereafter Debco Corporation filed a petition in bankruptcy, and plaintiff abandoned its cause of action against the Debco Corporation. The Referee in Bankruptcy abandoned the property plaintiff had a mortgage on after having it appraised and ascertaining that it was worth less than that which it was security for. Plaintiff then foreclosed its note and bought said property in at the valuation placed on it by appraisers appointed by the Referee, crediting the Debco note for said amount. Plaintiff thereafter sold some of the properties for more than the appraised value, some for less than the appraised value; and still has some of the properties in hand.

Trial was to the court and jury. At the close of the evidence the Trial Court withdrew the case from the consideration of the

Hale & Schraub, Corpus Christi, Jerry T. Stockard, Corsicana, for appellants.

Dawson & Dawson, Corsicana, for appellee.

McDONALD, Chief Justice.

This is a suit in which the appellee, as plaintiff filed suit against the appellants Dean and Evans, as defendants, upon a guaranty-surety agreement executed by them. The parties will be denominated hereafter as in the Trial Court. Defendants and the wife of one defendant were sole owners of the Debco Petroleum Corporation, which became indebted to plaintiff for a large sum of money. This indebtedness was reduced to a note, secured by a chattel mortgage on all the property of Debco Petroleum Corporation; and also a collateral agreement whereby defendants would turn over a service station to plaintiff when called on to do so was entered into. Plaintiff and defendants jointly employed

jury and entered judgment for plaintiff against Dean and Evans for $7,501.67, which was the amount due on the note after credits had been allowed. This amount included attorney's fees due on the note together with interest at the rate of 6% per annum.

Defendants appeal to this court on 3 points, to wit: 1) That the Trial Court erred in withdrawing the case from the jury and rendering judgment for plaintiff, because defendants pled and presented evidence that the guaranty was not supported by consideration, was executed with the understanding and agreement that defendants would not be personally liable, and that it was obtained by fraud—all of which defendants contend were disputed fact issues they are entitled to have the jury pass on. 2) That if the defendants are liable under the guaranty—the court erred in giving judgment for the full amount of the balance due on the note as defendants are not liable for attorney's fees under the guaranty —and defendants are entitled to further credit on the note to the extent of the additional value received by appellee from the sale of the property abandoned by the Referee in Bankruptcy. 3) That the court erred in overruling defendants' 2nd Amended Motion for Continuance.

■ As to defendants' 1st Point—In passing on the question of whether the court erred in withdrawing the case from the consideration of the jury and rendering judgment for plaintiff, it is well settled that where a finding by the jury either way on disputed fact issues could not change the judgment, which as a matter of law must be entered in the case, then the court is under a duty to withdraw the case from the jury and to render the proper judgment therein.

■ Defendants contend that the surety-guaranty agreement was not supported by consideration—The guaranty signed by defendants was an obligation of a corporation of which they were sole owners (except 1%, which belonged to one of defendants' wife). While Dean and Evans, under these circumstances, *were the actual bene-*ficiaries, such is not necessary. Consideration to support their surety-guaranty agreement exists by reason of the benefit accruing to the Debco Corporation. The surety agreement was made contemporaneously with the execution of the note by the Corporation. It was a part of the note before its delivery to and acceptance by plaintiff. To support a contract of suretyship-guarantyship it is not necessary that any consideration pass directly to the surety. A consideration moving to the principal alone will support the surety. Bonner Oil Co. v. Gaines, 108 Tex. 232, 191 S.W. 552.

■■ As to the contention of defendants that the surety-guaranty was executed with the understanding and agreement that they would not be liable thereon, and that it was obtained by the fraudulent representation that they would not be looked to for payment, there are no pleadings to support this issue. Further, an examination of Dean's own testimony reflects that *any* representations made to him or Evans were made by his attorney and not the plaintiffs. Moreover, there is no showing of any reliance on the representations. But even had defendants offered proof under proper pleadings that plaintiff had induced defendants to sign the note by a false representation—that he would not be personally liable thereon—or made an agreement or had an understanding to that effect, and had the jury so found, it still would avail defendants nothing. An unconditional written instrument cannot be varied or contradicted by parol agreements or by representations of the payee that the maker would not be held liable according to the tenor of the instrument. Mitcham v. London, Tex.Civ. App., 110 S.W.2d 140; Cooper Co. v. Smith, Tex.Civ.App., 126 S.W.2d 518; Crumpler v. Humphries, Tex.Civ.App., 218 S.W.2d 215.

In Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, 48, where the assertion was that certain promises were made contrary to the written agreement, the Commission of Appeals said:

"These representations were specifically negatived by the writing, and, if

by denominating them fraud the written contract may be set aside, then a written contract is of no higher dignity than an oral one. The rule forbidding the varying of a written contract by parol would become a dead letter if prior oral agreements were permitted to govern the parties rather than subsequent written agreements on the same subject matter. Attaching the label of fraud to the oral representations does not change their character."

Applying the rules of law announced to the facts in this case, it would not have made any difference how the jury might have found the facts as to consideration, agreements, understandings or promises.

Defendants' 1st Point is accordingly overruled.

As to the contention in defendants' 2nd Point—that the guaranty excluded an obligation to pay the attorney's fees provided for in the guaranteed note—the instrument of surety-guaranty says: " * * we do personally bind ourselves, our heirs and assigns, and do further guarantee the payment of the above mentioned note and do hereby promise to pay Allied Oil Company or order $30,483.48 * * *"

It is our view that there is no ambiguity in the guaranty and that it is an unconditional guarantee of the parent note—coextensive with the obligation of the principal obligor. If the language be ambiguous—which we say it is not—then the construction must be given which is most favorable to the promisee. This rule is applicable to any guaranty given for the business advantage of the guarantor, which was certainly true in the case at bar. (See 2 Williston on Contracts, Sec. 625).

As to the contention in defendants' 2nd Point—that if they are liable on the guaranty that they are entitled to full credit for any value received by plaintiff in addition to the valuation placed on the property by the Bankruptcy Court appraisers— a review of the facts in the case at bar reflects that after Debco filed its petition in

bankruptcy the Referee appointed appraisers to determine the value of its properties. The appraisers reported a value of $18,-485 on the property in question—which was considerably less than the mortgage indebtedness of the secured creditors. Thereafter the Referee entered an order directing the Trustee to abandon the property. The Trustee did abandon the property and had nothing further to do with it. There is *no* evidence that he abandoned it to plaintiff. Thereafter plaintiff foreclosed its mortgage, purchasing the property under the power of sale contained therein, using as a fair purchase price the same value which had been determined by the appraisers to be its fair market value. Plaintiff then took possession of the property and paid off or assumed the indebtedness of prior lienholders. Plaintiff then sold some items of the property for more than the price at which they had been purchased; some for less; and some it has not sold. There is no evidence in this record that plaintiff has in fact made a profit; but, even if it had, it would avail defendants nothing. Plaintiff obtained clear title when it purchased the property under its power of sale in its mortgage. Any other secured creditor could have done the same. So purchasing, plaintiff obtained a clear title which cannot be defeated by the mortgagor. (9 T.J. 190). To hold otherwise would make the purchaser a trustee; it would require the purchaser to buy at his peril and if later resold for a profit, the mortgagor could claim the profit; whereas if sold at a loss it could not avail itself of any relief. The rights of a mortgagee under a power of sale would be destroyed by such a rule.

Defendants' 2nd Point is accordingly overruled.

As to defendants' 3rd Point— that the Trial Court erred in overruling defendants' 2nd Amended Motion for Continuance—the record before us reflects that this case was filed April 21, 1952; that the case was first set for trial for October 6, 1952; was passed by agreement until January 12, 1953;—was continued to March 16, 1953 on 1st Motion for Continuance of de-

fendants; that on March 16, 1953 defendants made a 2nd Motion for Continuance which was by the court overruled; but the court re-set the case for March 19, 1953. It was on March 19, 1953 that defendants presented their motion designated 2nd Amended Application for Continuance, which was not favorably acted on by the Trial Court.

The granting or overruling of a Motion for Continuance is a matter addressed to the sound discretion of the Trial Court. The burden is upon the appellants to show that the Trial Court abused its discretion; and in the absence of such a showing this court will not disturb the Trial Court's action. In the case at bar defendants have not shown any abuse of discretion by the Trial Court and the defendants' 3rd Point is accordingly overruled.

Finding no reversible error, the judgment of the Trial Court is therefore affirmed.