Bruce BERRY, Appellant,

v.

ABILENE SAVINGS ASSOCIATION,
Appellee.

No. 4701.

Court of Civil Appeals of Texas,
Eastland.

Aug. 23, 1974.

Rehearing Denied Sept. 20, 1974.

Gayle E. Oler, Dallas, for appellant.

R. L. McSpedden, Collie, McSpedden & Roberts, Dallas, for appellee.

McCLOUD, Chief Justice.

The question presented is whether in a suit by a holder, not in due course, against the maker of a promissory note, the parol evidence rule prohibits the admission of extrinsic evidence showing that the maker was induced to sign the note by false and fraudulent representations of the original payee.

Plaintiff, Abilene Savings Association, sued defendant, Bruce Berry, on a promissory note dated March 6, 1967, in the original principal sum of $5,000 and made payable to Western Commercial Savings & Loan Association. The trial court granted plaintiff's motion for summary judgment. Defendant, Bruce Berry, has appealed. We reverse and remand.

The note in question was due and payable on March 6, 1968. Abilene Savings Association acquired the note on or after December 31, 1968. Plaintiff admits that it is not a holder in due course. Tex.Bus. & Commerce Code § 3.302, V.T.C.A., states that a holder in due course is a holder who takes the instrument "without notice that it is overdue."

Berry alleged that he was induced to sign the note by false and fraudulent representations made by Claude McAden, president of Western Commercial Savings & Loan Association, and Fred Newman, Berry's employer.

Berry's affidavit in opposition to plaintiff's motion for summary judgment states:

"During 1966 and 1967 I lived in the City of Abilene, Texas. I was a student in Abilene Christian College at that time, and I was also employed during this time by Fred Newman, who also lived in the City of Abilene, Texas. Fred Newman's residence was located in Abilene, Texas, just across the street from the residence of Claude McAden, who was during 1966 and 1967 President of Western Commercial Savings and Loan Association in Abilene. On March 6, 1967, I went to the office of Western Commercial Savings and Loan Association with Fred Newman, my employer. We both went into the office of Claude McAden, President of Western Commercial Savings and Loan Association. Mr. McAden told me that Western Commercial Savings and Loan Association was loaning $5000 to Fred Newman, but that because of certain restrictions and technicalities, he wanted me to sign the note instead of Newman, and then I would cash the $5000 check and give it to Fred Newman. Mr. McAden told me that the money was not for me and that I was not obligated on the note and would not be obligated on the note. He told me that the transaction was merely a technicality and a formality, and that he and Fred Newman would handle everything with respect to said note from then on, including the paying of the principal and interest, and that I would never in any respect be considered to be liable or responsible with respect to the note. He told me there was nothing to worry about, because he owned Western Commercial Savings and Loan Association. Mr. McAden told me to trust him and believe in him as a man of his word, and to sign the note. I was under a great deal of pressure from Mr. Newman and Mr. McAden to sign the note, and so I did sign the note. It was in the amount of $5000 and I believe it was a one year note. Mr. McAden then gave Mr. Newman a check from Western Commercial Savings and Loan Association in the amount of $5000, payable to me, and both Mr. Newman and Mr. McAden instructed me to go to the bank and cash the check for fifty $100 bills and give the cash to Fred Newman. I went down to the bank on which the check was written, the First State Bank, which was right across the street from Thornton's Store in Abilene, cashed the check, came back and gave the money to Fred Newman. I never received any of the proceeds of either the note or the check for my own use or benefit.

After I had signed the note and before I had gone to the bank, Mr. McAden again told me not to worry about the note that I just signed but to go on and cash that check and give the money to Fred Newman. He told me that Newman would pay the note and that Western Commercial Savings and Loan Association would look only to Newman for payment of the note and that it would never look to me for payment of the note. He told me to go on and cash the check and give the money to Fred Newman. He told me that he knew that I was a college student and had no money and had no property and he certainly wouldn't make that kind of a loan to me. He said that the loan was being made to Fred Newman, and that I should go ahead and cash the check and give him the money and that Newman and McAden would take care of everything. I relied upon Mr. McAden and Mr. Newman and went on and cashed the check and gave the money to Fred Newman . . .

. . . the note which I actually signed was signed by me in reliance upon the clear express promises and representations by Claude McAden and Fred Newman that I was signing the note for Fred Newman at the request of McAden and Newman and that I was not ever to be asked to pay the note. And, I cashed the check and gave the

money to Fred Newman in reliance upon the clear express promises and representations by McAden and Newman that I would never be asked to pay the note. I now believe that those promises and representations were falsely and fraudulently made, but at the time they were made I didn't know it, and I fully and conscientiously believed Mr. McAden and Mr. Newman and believed that they were telling me the truth."

Tex.Bus. & Commerce Code, § 3.306, provides:

"Unless he has the rights of a holder in due course any person takes the instrument subject to . . . (2) all defenses of any party which would be available in an action on a simple contract . . ."

We think the proper rule was applied in the recent case of Viracola v. Dallas International Bank, 508 S.W.2d 472 (Tex.Civ. App.—Waco 1974, writ ref'd n.r.e.). Viracola signed a note both as president of a corporation and in his individual capacity. In opposition to the bank's motion for summary judgment, Viracola filed an affidavit wherein he stated that he signed the note individually after he was assured by the bank that if a proposed sale of the corporation's stock was not finalized, his individual liability on the note would end. The stock was not sold and the bank sued Viracola on the note. The bank was granted a summary judgment against Viracola individually. In reversing the summary judgment the court said:

"Viracola's affidavit places in issue the question of whether or not the note was induced by fraud. Fraud in the inducement is a good defense in a suit on a note between the original parties. Costello v. Sample, (Tex.Civ.App.— Waco, 1971, writ ref. n.r.e.) 470 S.W.2d 446, 448; Secs. 3.408, 3.306(2) and 3.302, Vernon's Ann.Tex.Bus. & C.Code, V. T.C.A.

Bank asserts that Viracola's statements concerning the alleged fraudulent procurement of his signature is without probative value because they violate the rule which excludes parol evidence to vary the terms of a written instrument. Not so. The exception to that rule which permits the admission of extrinsic evidence to show that the execution of a simple contract was procured by fraud applies also in actions on notes. Farnsworth v. Dolch, (Tex.Civ.App.—Waco, 1972, writ ref. n.r.e.) 488 S.W.2d 531, 533; 23 Tex.Jur.2d 538, Evidence, Sec. 363; Sec. 3.306(2), Vernon's Tex.B. & C.Code; 9 Tex.Jur.2d 220, Bills & Notes, Sec. 207."

9 Tex.Jur.2d, Bills and Notes, § 268, states:

"Fraud enters into the making of a negotiable instrument in two classes of cases. In one case fraud may induce a person to assent to do something he would not otherwise have done. In the other it causes him to believe that the act he does is something other than it actually is. In the first case the act of the defrauded person is operative, though voidable, and the instrument is good in the hands of a holder in due course. *Such fraud, often referred to as 'fraud in the inducement,' is a good defense against a person other than a holder in due course* . . ." (emphasis ours)

Plaintiff cites Dean v. Allied Oil Co., 261 S.W.2d 900 (Tex.Civ.App.—Waco 1953, writ dism.) and a number of later cases which followed *Dean,* as authority for its contention that the parol evidence rule prohibits the admission of Berry's statements concerning the alleged fraudulent representations made by Claude McAden, president of the original payee. The court in *Dean* followed the rule announced in Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47 (1937) that parol evidence was not admissible to show that a party was induced to sign a contract because of false and fraudulent representa-

tions. Our Supreme Court in Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W.2d 233 (1957) rejected the rule announced in *Patton* and adopted the rule that parol evidence is admissible to show that a contract was induced by fraud.

Also, plaintiff's reliance on Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948 (1960) is misplaced. There the court expressly noted that the defendant did not contend that fraud in the inducement afforded any basis for denying plaintiff's motion for summary judgment.

Defendant alleged that he was fraudulently induced to sign the note and his affidavit raises a genuine material issue of fact. The Court erred in granting plaintiff's motion for summary judgment.

The judgment is reversed and the cause remanded.

RALEIGH BROWN, J., not participating.