DIAMOND PAINT COMPANY OF
HOUSTON et al., Appellants,

v.

John A. EMBRY, Jr., Trustee, et
al., Appellees.

No. 1069.

Court of Civil Appeals of Texas,
Houston (14th Dist.)

June 18, 1975.

Rehearing Denied July 9, 1975.

Michael S. Wilk, Hirsch, Westheimer & Block, J. Eugene Clements, Sewell, Junell & Riggs, Houston, for appellants.

T. J. Sims, Urban, Coolidge, Pennington & Scott, Grant Cook, Reynolds, White, Allen & Cook, Houston, for appellees.

CURTISS BROWN, Justice.

This case originated in a loan transaction. W. D. "Don" Shepherd (Shepherd) was active in many business and promotional activities including a number of corporations containing the word "Diamond" in their name. He was a major stockholder and dominated the activities of these companies which were often managed with very little regard for corporate formalities. Diamond Paint Company (Paint) was a viable and somewhat successful company. Shepherd organized Diamond Industries (Industries) for the purpose of holding stock in other "Diamond" companies including Paint. At the time of the loan in question Diamond Manufacturing (Manufacturing) had been recently incorporated with a view of exploiting the talents of a person having expertise in the field of defense contracts and industries. This company was "starting

out" and had very little, if any, financial resources. The merger between Paint and Manufacturing was being effected but the exchange of stock had not yet been completed on October 1, 1969 (the date of the loan made the basis of this suit). Shepherd approached William Ladin (Ladin or appellee) and the Small Business Investment Corporation (SBIC or appellee) in an attempt to secure a loan for Manufacturing. Ladin was the dominant influence at SBIC. He was unable to accommodate Shepherd but did agree to make "take-out" commitments if another lender could be found. John A. Embry, Trustee for the Estate of Lillie Houseman (Embry or appellee) was approached and he agreed to fund a loan of $100,000 if adequate security was provided. It was eventually agreed that the note would be executed by Manufacturing with personal guaranties by Shepherd, Industries and Paint. In addition, take-out commitments by Ladin (25%) and the SBIC (75%) were required. A third lien was also to be taken on certain realty owned by Shepherd.

Manufacturing came to be in default and Embry called on Ladin and SBIC to honor their take-out commitments. Ladin sought to persuade Embry to look to Manufacturing, Shepherd, Industries, Paint and the real estate. Since the financial strength of Shepherd and his companies had begun to disintegrate, Embry chose to enforce the take-out commitments and instituted this suit in an effort to do so. After this suit had been pending for some time, Ladin and SBIC agreed to pay Embry the $100,000 principal amount. After such payment, Ladin and SBIC brought a cross-action against Manufacturing on the note and Paint on its guaranty. Embry also filed against Manufacturing and Paint for the difference between the principal amount received, $100,-000 (which was the face amount of the note) and other charges including interest, expenses and attorney's fees as provided in the note. Shepherd placed the Paint Company stock as security for a loan to Indus-

tries, at American Bank of Galveston (Bank). Following default on this loan, the Bank foreclosed on the Paint stock. The Paint stock was acquired by Standard Southern (Southern or appellant). Southern, as the sole outstanding shareholder of Paint, intervened and sought to enjoin the payment of the guaranty as being illegal or *ultra vires.* Trial was to a jury.

In answer to special issues submitted to them, the jury found: that W. C. Marshall (Marshall) had apparent authority to execute the Paint guaranty; that Embry acted in reliance upon such apparent authority; that Ladin and SBIC also relied thereon; that Paint ratified the guaranty; that the President of Paint was absent or unable to act; that Marshall had express authority to execute the guaranty on behalf of Paint; refused to find that there was no consideration for Manufacturing becoming maker of the note; refused to find that there was no consideration for Paint's guaranty; that while Shepherd received money from the loan in question, such loan was not made solely for his benefit; refused to find that only Ladin and Shepherd benefited from the loan. Thus, the jury answered all issues submitted to them in favor of appellees and against appellants. The trial court entered a judgment on the verdict against Manufacturing and Paint and refused the injunctive relief sought by Southern. Hence, this appeal.

Paint assigns fifty-six points of error which essentially present the following contentions: (1) The payment by Ladin and SBIC to Embry amounted to a settlement which released appellants; (2) that the letters of Ladin and SBIC were contracts of guaranty and as a matter of law that Ladin and SBIC could not recover against appellants on the note or its guaranty; (3) that the guaranty is illegal and unenforceable; (4) that there was no consideration for the note by Manufacturing or the guaranty by Paint; (5) that the doctrine of apparent authority is inapplicable and there is no

evidence or insufficient evidence to justify the findings of express authority for the guaranty; (6) that the issues of apparent authority and ratification were insufficiently supported by the pleadings and by the evidence. Southern makes these same assignments with the additional claim as intervenor that it is entitled to an injunction prohibiting Paint from making any payment under the guaranty since it is illegal, or, in the alternative, *ultra vires.*

Both appellants take the position that the acceptance by Embry of partial payment with knowledge of the insolvency of Manufacturing precludes any recovery by the appellees. It is contended that the take-out commitments were guaranties. Further, that as co-guarantors with Ladin and SBIC the settlement constituted a satisfaction of the debt which would preclude recovery by Embry. It is also maintained that subsequent to the settlement, Ladin and SBIC could recover from Paint, if at all, on a theory of contribution between co-guarantors which was neither pled nor proved. We do not agree.

 The rule that acceptance of partial payment with knowledge of the obligor's insolvency will extinguish the debt is well established. *Pugh v. Turner,* 145 Tex. 292, 197 S.W.2d 822 (1946); *City of San Antonio v. Guido Bros. Construction Co.,* 460 S.W.2d 155 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.). It has been extended to guarantors. *United States Gypsum Company v. Sampson,* 496 S.W.2d 687 (Tex.Civ. App.—Amarillo 1973, no writ). The rationale of these cases depends upon the nature of accord and satisfaction and the law of guaranty. It is, therefore, necessary to determine whether the "take-out" letters were guaranties. It is settled that "the nature of the obligation, not the words used, determines the status" of a purported guaranty. *Texas Tractor Co. v. Texas Power & Light Co.,* 412 S.W.2d 935, 937 (Tex. Civ.App.—Waco 1967, no writ); *Wood v.*

*Canfield Paper Co.,* 117 Tex. 399, 5 S.W.2d 748 (1928, opinion adopted).

The take-out letters of Ladin and SBIC to Manufacturing and Embry were identical except for the amount and entity named. They provide in part: "This will constitute a commitment on the part of William E. Ladin of Houston, Texas, to purchase from John A. Embry, Jr., . . . a $25,000.00 interest in your promissory note in the original principal sum of $100,-000.00 dated September 29, 1969 . . ." The letter further provided:

[i]n the event said $100,000.00 promissory note executed by Diamond Manufacturing Company is not paid in accordance with its original tenor and effect, then John A. Embry, Jr., . . . shall give William E. Ladin written notice by certified mail of such non-payment, concurrently with written notice to Diamond Manufacturing Company, and in the event said note is not paid within ten (10) days after receipt of such notice William E. Ladin within twenty (20) days after the receipt of such notice shall purchase said $25,000.00 interest in said promissory note from the said John A. Embry, Jr., . . . without recourse, and John A. Embry, Jr., . . . shall assign to William E. Ladin any and all collateral, guarantees and liens securing said note.

· · ·

Following settlement of the suit by Embry against Ladin and SBIC, Embry executed an "assignment of collateral" to Ladin and SBIC to the extent of $100,000 and interest thereon at the rate of 10% per annum. The assignment of collateral included, but was not limited to, the guaranty of Paint and Diamond Industries.

While the obligation functionally served to provide additional security for Embry, it did not amount to a guaranty of payment of the debt of another. Under these letters, Ladin and SBIC were obligated to *purchase*

the promissory note of Manufacturing. Upon the purchase of such note, they were entitled to an assignment of collateral securing the note. Ladin and SBIC did not promise to answer for the debt of another. On the contrary they agreed to purchase the note and thereafter stand in the shoes of Embry with his rights against the maker and the collateral securing the note including the guaranties executed by Paint, Shepherd and Industries. We therefore hold that these take-out commitments were not guaranties. It follows that the settlement of the contractual dispute between Embry and Ladin and SBIC did not extinguish the debt. Embry properly maintained his right to seek the balance of the interest, expenses and attorney's fees not included in the payment made under the take-out letters.

■ Appellants contend that there was no consideration for the note of Manufacturing and the Paint guaranty. It is also urged that answers of the jury to special issues numbers 11 and 12 relating to consideration were factually and legally insufficiently supported by the evidence; we do not agree. It is apparent that there were numerous transactions between Shepherd and the various Diamond entities in which cash was both infused and withdrawn. The record would support the conclusion that some of the funds were transmitted from Shepherd to Paint following the loan in question. It is unnecessary, however, to rest our opinion upon such a basis because of the well-settled proposition that consideration may consist of a detriment to the promisee or a benefit to the promissor. *See James v. Fulcrod,* 5 Tex. 512 (Tex.Sup. 1851). Embry testified that he funded the loan on the basis of the entire "package". This package included the obligation of the maker, guaranties of Paint, Industries and Shepherd and the third lien on certain real estate as well as the take-out commitments of Ladin and SBIC. It was on the "faith" of the note as well as the satellite guaran-

tees and commitments that the loan was issued. There was consideration for the note. *Union Cent. Life Ins. Co. v. Roach,* 106 S.W.2d 374, 377 (Tex.Civ.App.—Waco 1937, writ dism'd).

In *Shaw v. McShane,* 50 S.W.2d 278 (Tex. Comm'n App.1932, jdgmt. adopted), a bank director was the maker of a note in return for money of a bank which was applied to protect a lien interest of the bank. Although the director received no benefit directly or indirectly the note was held to be supported by consideration. The Court stated that a "note given for money borrowed for the sole benefit of a third party is based upon a valid consideration." Manufacturing was a new corporation. It is not unusual for a lender dealing with corporations or persons of limited resources to look to guarantors or other collateral for security other than the maker. As we pointed out in *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.,* 423 S.W.2d 645, 652 (Tex.Civ. App.—Houston [14th Dist.] 1968), *rev'd on other grounds,* 436 S.W.2d 889 (Tex.Sup. 1969), the contract of guaranty itself being in writing "imported a consideration." Where a note and a guaranty are executed contemporaneously, if there is consideration for the note, then there is consideration for the guaranty. *Dean v. Allied Oil Co.,* 261 S.W.2d 900 (Tex.Civ.App.—Waco 1953, writ dism'd). We hold therefore that the note and guaranty were supported by consideration.

■ Appellants attack the jury findings of actual and apparent authority as well as the findings of ratification. The attacks are predicated upon the contention: (1) if a transaction is not in the usual course of business, one may not rely upon apparent authority; (2) that as to Ladin and SBIC, the findings are not sufficiently supported by pleadings; (3) that the evidence was insufficient to support the findings both legally and factually. In *Great American*

*Ins. Co. v. Sharpstown State Bank,* 460 S.W.2d 117 (Tex.Sup.1970), the Supreme Court reversed the Court of Civil Appeals' decision which had held that apparent authority had been established as a matter of law. No issue had been requested. The Supreme Court held that there was some evidence to support a finding of lack of apparent authority. The transaction in *Sharpstown* was the issuance of a *performance* bond as security for a promissory note. Despite the testimony that this was a most unusual situation, the Court held that the question of apparent authority was a question of fact for the jury. In that case, the expert witnesses did not know of any instances where a performance bond had been issued by an insurance company as security for a promissory note. Therefore, even if the transaction was not in the usual course of business, apparent authority may provide a basis of liability of a corporation for the act of its purported agent. The issue here is whether Paint's conduct was such as to lead a reasonably prudent person, using diligence and discretion, to suppose that Marshall had the authority to bind Paint and that appellees were induced by such conduct to act to their detriment. The issue tendered by Paint of whether the execution of the guaranty was in the normal course of the business was properly refused as it is evidentiary and not controlling. Texas Rules of Civil Procedure, rule 277. The closing was attended by the Chairman of the Board, Vice-President and Secretary of Paint. These officers of the corporation tendered the corporate resolution authorizing the execution of the guaranty and both officers executed it at the closing. Embry testified that he would not have made the loan except for the entire "package". Clearly, such conduct in evidence supported the finding of apparent authority and the reliance of Embry, Ladin and SBIC thereon.

■ With respect to the matter of pleadings, it is clear that Embry pled actual and apparent authority of Marshall and Latner while Ladin and SBIC pled the existence of the guaranty and the "authority" for its execution. Appellees are correct that by pleading the more inclusive of theories, they have in the absence of special exception, pled the lesser included. 3 McDonald, Texas Civil Practice § 12.07 (1970).

■ The evidence in support of the findings of actual authority consists of a corporate resolution of Paint authorizing the Secretary and President to execute the guaranty. This resolution is attacked by Paint as hearsay. We agree with appellees' contention that the resolution is not hearsay as it was an operative act of the corporation creating express authority. 1 McCormick and Ray, Texas Law of Evidence § 795 (2*nd* ed. 1956). Further, Latner (the Secretary of the Corporation) had the actual authority to certify copies of Board resolutions. It is elementary that a corporation is estopped from denying the representations of an agent made within the scope of authority. *McMan Oil & Gas Co. v. Hurley,* 24 F.2d 776 (5*th* Cir. 1928). As Paint is estopped to deny the representation by Latner (its secretary) in the certificate, there was express authority for the execution of the guaranty. In addition, there was evidence that the resolution was presented to Embry at the closing. The evidence was conflicting as to the availability of Hood (the actual President of Paint) at the time of closing. The jury chose to believe that Hood was unavailable and we cannot say that there was no evidence or insufficient evidence to support their answers to the issues of express authority. *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (Tex.Sup.1914); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.Sup.1965). A Vice-President may validly act for the President in his absence. *Ballard v. Carmichael,* 83 Tex. 355, 18 S.W. 734 (Tex.Sup.1892); *Hufstedler v. Sides,* 165 S.W.2d 1006 (Tex. Civ.App.—Amarillo 1942, writ ref'd). Thus, the act of the Vice-President in accordance

with the express authority granted to the President was valid.

In addition to the findings of actual and apparent authority, the judgment is independently supported by the findings that Paint ratified the transaction. Appellants attack these findings. Ratification may either be express or implied from a course of conduct. Silence which misleads the other party to the transaction to his detriment may constitute such course of conduct. *Petroleum Anchor Equipment, Inc. v. Tyra*, 419 S.W.2d 829, 834 (Tex.Sup. 1967); *Brown v. Grayson Enterprises, Inc.*, 401 S.W.2d 653 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.). This case involves the question as to whether Paint failed to disaffirm the guaranty. It is required that where silence is the basis of ratification that knowledge of all material facts be possessed by the "principal." *Brown v. Grayson Enterprises, Inc., supra.* Hood testified that he learned of the guaranty in the Spring of 1970. It was, of course, known to Latner and Marshall in October of 1969. Ladin testified that he informed a director and officer of Paint of the guaranty, while that company was owned by American Bank of Galveston. Owens, an employee and director of Paint, was advised of the guaranty in March-April of 1970. There was no evidence that any of these agents, whose knowledge may be attributed to the corporation, ever repudiated the guaranty. There is a conflict in the evidence between the testimony of Gillespie (a Paint director) and Ladin as to whether there was a repudiation to Ladin during a meeting between them. There was testimony that Hood had noted the guaranty in a reconstructed balance sheet dated February 28, 1970 and that the President of Southern "probably" saw such balance sheet in the course of investigating whether or not to purchase Paint. The notation on the balance sheet referred to the guaranty as "probable of collection." Under appropriate standards of review as established by the Supreme Court, we cannot say that the attack of appellants upon these findings are well founded.

Appellants present points asserting that the guaranty violated Vernon's Ann. Tex.Civ.St.Misc.Corp.Act art. 1302–2.06 (as amended in 1963) and is illegal and unenforceable. Appellants say that our decision in *Cooper Petroleum Company v. LaGloria Oil & Gas Co.*, 423 S.W.2d 645 (Tex.Civ.App. —Houston [14th Dist.] 1968), *rev'd on other grounds*, 436 S.W.2d 889 (Tex.Sup.1969) is not controlling because the Legislature amended the Act to add section B in 1963. Section B *permits* corporate guaranties of obligations of subsidiary, parent, or affiliated corporations as defined in that section. The Legislature, in providing that certain guaranties are neither illegal nor *ultra vires*, affords no basis to avoid the holding in *Cooper Petroleum*. In *Whitten v. Republic National Bank of Dallas*, 397 S.W.2d 415 (Tex.Sup.1965) the Supreme Court restates the test of *Bond v. Terrell Cotton and Woolen Manuf'g Co.*, 82 Tex. 309, 18 S.W. 691 (1891) as to the distinction between illegal and *ultra vires* acts. To be illegal, the act must be essentially evil or immoral, expressly prohibited by specific statute or contrary to public policy. *Whitten v. Republic National Bank of Dallas, supra* at 418. This guaranty is not essentially evil, and it is not expressly prohibited by a specific statute. As regards public policy, we note that the Legislature amended Article 1302–2.06 in 1973 to provide that corporate guaranties are permissible where they directly or indirectly benefit the corporation. While this statute is not controlling, it is indicative of the trend of public policy from 1963 to the present to increasingly sanction corporate guaranties and to ease restrictions against them. We cannot say in light of this trend that the guaranty here is in violation of public policy and therefore illegal. Paint is denied the defense of *ultra*

*vires* under Article 2.04(b) of the Tex.Bus. Corp.Act Ann.V.A.T.S. (1956).

Southern was allowed to intervene and asserts as appellant here, as it did in the trial court below, that it is entitled as a matter of law to an injunction prohibiting Paint from making any payment under its purported guaranty since the guaranty is claimed to be illegal, or in the alternative, ultra vires. The loan made the basis of this suit was closed on or about October 1, 1969. In early 1970, the transfer of Industries' stock for Paint stock had been completed. Industries made a loan at the American Bank of Galveston and pledged Paint's stock as collateral. In June of 1970, this stock was acquired by the Bank through foreclosure following default. Thus, the Bank became the sole stockholder of Paint. Following negotiations in June or July of 1970, Southern acquired Paint in October of that year. The acquisition was structured so that Southern for $20,000 purchased 30,000 shares of Paint and Paint purchased 270,000 shares of its own stock for $180,000. Therefore, Southern is the sole stockholder of Paint (other than itself).

Appellant intervenor Southern cites Article 2.04 of the Tex.Bus.Corp.Act entitled "Defense of Ultra Vires" providing in pertinent part as follows:

> B. No act of a corporation . . . shall be invalid by reason of the fact that such act . . . was beyond the scope of the purpose or purposes of the corporation as expressed in its articles of incorporation or by reason of limitations on authority of its officers and directors to exercise any statutory power of the corporation, as such limitations are expressed in the articles of incorporation, but that such act . . . was, or is, beyond the scope of the purpose or purposes of the corporation as expressed in its articles of incorporation or inconsistent with any such expressed limitations of authority, may be asserted:

> (1) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. If the unauthorized act or transfer sought to be enjoined is being, or is to be, performed or made pursuant to any contract to which the corporation is a party, the court may, if all of the parties to the contract are parties to the proceeding and if it deems the same to be equitable, set aside and enjoin the performance of such contract, and in so doing may allow to the corporation or to the other parties to the contract, as the case may be, compensation for the loss or damage sustained by either of them which may result from the action of the court in setting aside and in enjoining the performance of such contract, but anticipated profits to be derived from the performance of the contract shall not be awarded by the court as a part of loss or damage sustained.

It may be an over-simplification to say that the Act provides that (1) *ultra vires* acts are not illegal or invalid; (2) that in a proceeding "by a shareholder against the corporation" the Court *may* enjoin the performance of such contract if it *deems such injunction to be equitable;* and (3) provides that the court may allow the corporation or *other parties to the contract* compensation for the loss or damage sustained except for anticipated profits.

The question presented here is whether the trial court as a matter of law abused its discretion in refusing the injunction. Appellees claim that Southern was the sole outstanding shareholder of Paint and thus seeks to distinguish appellants from the equitable position disclosed in *Intercontinental Corporation v. Moody,* 411 S.W.2d 578 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). They claim that where, as here, the sole outstanding shareholder is

seeking the injunction that such shareholder has not and is not deprived of information as is the case when the corporate stock is widely held by different persons in varying amounts. We do not agree with appellees in this regard. The Act refers to "a shareholder". Nor do we accept appellees' contention that, as sole outstanding stockholder, an injunction on behalf of Southern would be tantamount to enjoining itself. While Southern owns 100% of the outstanding stock of Paint, it is, in the absence of a proof of *alter ego,* a separate entity. *Evans v. General Ins. Co.,* 390 S.W.2d 818 (Tex.Civ. App.—Dallas 1965, no writ). These facts, while not precluding appellant Southern from the relief it seeks, are relevant and material to the determination as to whether the court "deems the same (injunction) to be equitable." Undoubtedly, Southern's officers and directors were aware of the existence of the guaranty before purchasing the company. While it may have been "only haphazardly" informed as contended by appellants, it is certain that they made no investigation and elected to ignore the matter. Hood had prepared a reconstructed balance sheet showing the contingent liability on the guaranty and that it was "probable" of collection. The President of Southern testified that he "probably" saw this balance sheet. Furthermore, the Act clearly provides that the court may allow the other parties to the contract (i. e. Embry, Ladin and SBIC) compensation for the loss or damage sustained by them in granting such injunction. The court here could well have concluded that such loss or damage was largely measured by the recovery allowed and that to grant the injunction would be useless as well as inequitable. All of the facts and circumstances before the Court preclude the conclusion that the trial court abused its discretion as a matter of law in refusing the injunction requested.

All of appellants' points of error have been considered and are overruled.

Affirmed.