# MAY, 1928

OWEN A. WOOD v. CANFIELD PAPER COMPANY.

No. 4559. Decided May 2, 1928.
(5 S. W., 2d Series, 748.)

*John J. Hiner,* for appellant. The holder of a contract or other obligation may not lawfully maintain suit thereon against a surety or guarantor of such contract or obligation without at the same time, or previously, suing the maker or principal obligor in such contract, unless the petition in such case alleges some one or more of the statutory reasons for not joining the maker or principal obligor in such suit; and a failure to make such allegations renders the petition subject to a general demurrer. Rev. Stats., Arts. 6336, 6337, 1842 and 1843; Mullaly v. Ivory, 30 S. W., 259; Elliott v. Wiggins, 16 Texas, 597; Fisher v. Phelps, 21 Texas, 555; Kampmann v. Williams, 70 Texas, 571; Yale v. Ward, 30 Texas, 221; Elliott v. Bank, 105 Texas, 547; Moore v. Belt, 206 S. W., 225.

*Austin F. Anderson* and *McGown, McGown & Anderson,* for appellee.

(a) The court properly overruled defendant's general demurrer because the contract sued upon, and which was fully set out in plaintiff's petition, was one of absolute guaranty, to which Arts. 1842, 1843, 6336 and 6337, Rev. Stats., 1911, do not apply, therefore, the principal obligor was not a necessary party, nor was it necessary for said petition to allege any reason for not joining the principal obligor in such suit. (b) A guaranty of payment of an obligation of another at a fixed time constitutes an absolute guaranty as distinguished from a conditional guaranty and creates a primary and independent obligation to pay on the part of the guarantor in the event of default, as distinguished from a secondary and conditional liability under a technical or conditional guaranty. (c) The guaranty in this case is a guaranty of payment at a fixed time and not of collection, thus creating an absolute instead of a technical or conditional guaranty. (d) Arts. 6336, 6337, 1842 and 1843, Revised Statutes of the State of Texas, apply only to parties secondarily and conditionally liable, having no application to a party primarily liable upon a contract of absolute guaranty. Ruling Case Law, Vol. 12, p. 1064, p. 1089; 28 C. J., p. 895, p. 972; Parker v. McKelvain, 17 Texas, 158; Tobin Canning Co. v. Fraser, 81 Texas, 407, 17 S. W., 25; Grant v. Alfalfa Lbr. Co., 177 S. W., 536; First State Bank of Windom v. McElwrath, 266 S. W., 837; Hulme v. Levis-Zuloski Mctl. Co., 149 S. W., 781; Tilt-Kenney Shoe Co. v.

Haggarty, 114 S. W., 386; McCormick Harvesting Mach. Co. v. Millett, 29 S. W., 80; McCarroll v. Red Diamond Clo. Co., 151 S. W., 1012, 43 L. R. A. (N. S.), 475; Bank of Italy v. Merchants Natl. Bank, 188 N. Y. Supp., 183; Bank of Plant City v. Canal Commercial Bank, 270 Fed., 477; Shropshire v. Smith, 37 S. W., 470; Slaughter v. Morton, 185 S. W., 905; El Paso Bank & Trust Co. v. First State Bank of Eustis, 202 S. W., 522; Smith v. Cummer Mfg. Co. of Texas, 223 S. W., 338; Ganado Land Co. v. Smith, 290 S. W., 920; Austin v. Guaranty State Bank of Copperas Cove, 30 S. W., 129.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Sec. A.

The certificate of the Court of Civil Appeals, Second District, reads as follows:

"The Canfield Paper Company, a corporation, instituted this suit to collect a debt in the sum of $2,852.67 for goods sold by the plaintiff to the Popular Finance Publishing Corporation. The suit was not instituted against the corporation last named who purchased the goods, but was against Owen A. Wood, and the demand against him was based solely upon the following letter signed by the defendant and accepted by the plaintiff, and by reason of which the goods were sold and delivered. The letter was copied in the petition and reads as follows:

" 'March 12, 1924.

Canfield Paper Company,
62–64 Duane Street,
New York City.

Attention Mr. F. W. Osgood, Manager.

Dear Sir:

Thank you for your favor of yesterday in which I am pleased to note that your firm will be glad to accept orders from the Popular Finance Publishing Corporation, providing I give you my written guarantee that payment will be made within sixty days from date of invoice. It being the understanding that we will wish to limit the amount to cover two months' issues, which at present amount to about $6,000.

This arrangement will be entirely satisfactory to us and meets with our approval. I accordingly wish to advise you that I will

personally guarantee the payment of your bills for paper ordered by the Popular Finance Publishing Corporation to the extent of $6,000.

You will accept this letter as such written guarantee.

Very truly yours,

(Signed)   OWEN A. WOOD.'

"It was alleged that 'the Popular Finance Publishing Corporation has wholly failed and refused to pay the same or any part thereof; that by reason of the failure and refusal of the said Popular Finance Publishing Corporation to pay said sum aforesaid and the guaranty aforesaid, the defendant, Owen A. Wood, thereby became liable and bound to pay this plaintiff the said sum in said account specified, yet though often requested defendant has not paid the same or any part thereof.'

"No reason or excuse was alleged in the petition for not suing the Popular Finance Publishing Corporation, the principal debtor, nor was there any allegation that a judgment had already been recovered against it for the debt.

"In answer to the petition the defendant filed a general demurrer and a general denial. His general demurrer was overruled and he excepted to that ruling.

"The case was then tried and upon evidence heard judgment was rendered in plaintiff's favor for the amount of the debt claimed in the petition. From that judgment the defendant has prosecuted this appeal.

"The only assignment of error presented in this court by appellant is that the court erred in overruling his general demurrer to the plaintiff's petition. In support of that assignment he relies upon the provisions of the following four articles of the statutes and the absence of any showing of reason for not suing the principal, such as are mentioned in Art. 1843, Revised Statutes:

" 'Art. 6336: No surety shall be sued, unless his principal is joined with him, or unless a judgment has previously been rendered against his principal except in the cases provided for in Art. 1843.

" 'Art. 6337: The remedy provided for sureties by this title extends to indorsers, guarantors, drawers of bills which have been accepted, and every other suretyship, whether created by express contract, or by the operation of law.

" 'Art. 1842: The acceptor of any bill of exchange, or any other principal obligor in any contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against such other party not primarily liable on such

bill or other contract, unless judgment shall have been previously, or shall be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided.

"'Art. 1843: The assignor, indorser, guarantor and surety upon any contract, and the drawer of any bill which has been accepted, may be sued without the necessity of previously, or at the same time, suing the maker, acceptor or other principal obligor, when he resides beyond the limits of the State, or in such part of the same that he cannot be reached by the ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually not notoriously insolvent.'

"The following authorities cited by appellant seem to support the contention that the demurrer should have been sustained: Mullaly v. Ivory, 30 S. W., 259; Elliott v. Wiggins, 16 Texas, 597; Fisher v. Phelps, 21 Texas, 555; Kampmann v. Williams, 70 Texas, 571; Elliott v. Bank, 105 Texas, 547; Moore v. Belt, 206 S. W., 225.

"Appellee insists that the demurrer to the petition was properly overruled since the appellant's guaranty was absolute and unconditional. In other words, it is insisted that only conditional guarantors, as distinguished from absolute guarantors, were embraced within the meaning of the articles of the statutes above quoted.

"The following are the principal authorities relied on by appellee in support of its contention: Smith v. Cummer Mfg. Co., 223 S. W., 338, and other authorities there cited; El Paso Bank & Trust Co. v. First State Bank, 202 S. W., 522; Slaughter v. Morton, 185 S. W., 905; Tilt-Kenney Shoe Co. v. Haggarty, 43 Texas Civ. App., 335, 114 S. W., 386; McCarroll v. Red Diamond Clothing Co., 105 Ark., 443, 151 S. W., 1012, 43 L. R. A. (N. S.), 475.

"While the decisions last cited seem to support appellee's contention, yet we are inclined to a contrary conclusion, in view of the fact that the statutes are plain and unambiguous, applying to guarantors generally without any distinction between absolute and conditional guarantors. In other words, since the statutes seem to us plainly to refer to all contracts of guaranty alike without any distinction between absolute and conditional guaranties, we are inclined to the opinion that the courts are not warranted in reading into them, as it were, the distinction made by the decisions cited by appellee. We believe those decisions are in principle, to say the least, in substantial conflict with most of those cited by appellant.

"In view of what we have said and of the importance of an authoritative determination of the question, we deem it advisable to certify to your Honorable Court the following question:

"Did the trial court err in overruling appellant's demurrer to appellee's petition?"

OPINION.

A guarantee, according to Judge Storey, is "an undertaking by one person to be answerable for the payment of some debt or the performance of some contract or duty by another person, who himself remains liable." That definition consists with the ancient as well as the modern concept and with the popular as with the technical idea. Vide Webster; 2 Daniel on Negotiable Instruments (5th Ed.), Sec. 1752; Clymer v. Terry, 50 Texas Civ. App., 300, 109 S. W., 1129, 1131.

The statutes mentioned in the certificate were enacted in 1858, and in substantially the original form they have been re-enacted in all of the revisions. That law-makers used the word "guarantors" with knowledge of the meaning imported by Judge Storey's definition is not to be doubted; a question here is a challenge of their knowledge of the unchanging popular and technical meaning of an ordinary and much used word. The statutes include the term and omit qualification touching those who may claim their benefits. The law is so written; and as written it must be given effect unless, indeed, a reason appears of imperative force to wrench the word from its obvious meaning and to disclose an intent apparently negated.

Magic is not a quality of nomenclature; and the fact that a person may call himself a "guarantor" does not inevitably make him one. Davis v. Patrick, 141 U. S., 479, 12 Sup. Ct., 58, 35 L. Ed., 826. His obligation gives character and if by that he be a "guarantor" there is in the court no warrant for withholding from him what the law-makers said he should have. That Wood's obligation lies within the generally accepted definition of "guaranty" is too plain to admit of argument. That no contrary meaning was intended by the parties or is to be found lurking amongst the words used is affirmed in the pleading. It is there said: (a) Wood represented that Popular Finance Publishing Corporation desired to purchase and "would make payments;" (b) Canfield Paper Company took the matter under consideration and then advised Wood that orders from Popular Finance Publishing Corporation would be accepted, provided he "would give * *. *. a written guaranty;" (c) Wood gave

said "guaranty" and thereupon Canfield Paper Company "sold and delivered to the said Popular Finance Publishing Corporation * * * certain goods" and thereby "said Popular Finance Publishing Corporation did then and there promise to pay to plaintiff * * * so much money as said goods * * * were reasonably worth, $2,052.67;" (d) "said Popular Finance Publishing Corporation has not paid said sums of money" and "by reason of the failure and refusal of the said Popular Finance Publishing Corporation to pay said sum aforesaid, and the guaranty aforesaid, * * * Owen A. Wood thereby became liable."

It is Popular Finance Publishing Corporation's debt for which Wood is sought to be held; liability of that debtor persists (see Bason v. Hughhart, 2 Texas, 476; Smith v. Montgomery, 3 Texas, 204; Warren v. Smith, 24 Texas, 484, 76 Am. Dec., 115, and Muller v. Riviere, 59 Texas, 640, 46 Am. Rep., 291), and for aught disclosed there is no arrangement between that debtor and Wood whereby the latter (as between themselves and, thus, at option of the creditor), has assumed payment (see Spann v. Cochran & Ewing, 63 Texas, 240; Hill v. Hoeldtke, 104 Texas, 594, 142 S. W., 871, 40 A. L. R. (N. S.), 672; Bank of Garvin v. Freeman, 107 Texas, 523, 181 S. W., 187, and Blankenship & Blake Co. v. Tillman, Texas Civ. App., 18 S. W., 646. The exhibition made is of an undertaking "to answer for the debt, default or miscarriage of another" such as must be in writing (Art. 3995, R. S., 1925; Art. 3965, R. S., 1911; Housley v. Strawn Merc. Co. (Texas Comm. App.), 291 S. W., 864; Williston on Contracts, Sec. 462), and by the same token its essence is that of a guaranty.

In Art. 6336, R. S., 1911 (Art. 6251, R. S., 1925), it is declared that "no surety shall be sued, unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in the cases otherwise provided for in the laws relating to parties to suits." Art. 6337, R. S., 1911 (Art. 6252, R. S., 1925), so operates as to make "guarantors" the peers of "sureties" in respect both to the benefits described in Art. 6336 and the restrictions put upon the right to claim those benefits "in the cases otherwise provided for in the laws relating to parties to suits" (i. e., in Arts. 1842 and 1843, R. S., 1911, Arts. 1986 and 1987, R. S., 1925). Since a surety is primarily and directly liable to the obligee the words "party not primarily liable," as used in Art. 1842, must be taken as meaning the person who ought not as between obligors be required to pay the debt or to perform the contract. And

the words "principal obligor" used in Art. 1843 must be taken as signifying the person who (as between himself and the "surety," "guarantor," etc.) owes the debt or who ought have the burden otherwise. This, in consequence of the substantial differences between the contract of suretyship, on the one hand, and that of guaranty, etc., on the other hand, in truth as compared with the arbitrary and unrestricted grouping of sureties, guarantors, etc., in Arts. 6336 and 6337. The Legislature had the right thus to ignore distinctions in fact and to rest the procedural statute upon arbitrary selection. That situation renders unimportant, so far as the present case is concerned, most of the discussion to be found in text-books and opinions classifying guarantors into those who are such "absolutely" and those who are such "conditionally."

In so far as we are advised, there is no expression by the Supreme Court of Texas in conflict with this view. Our attention has been called to Parker v. McKelvain, 17 Texas, 158, and Tobin Canning Co. v. Fraser, 81 Texas, 407, 17 S. W., 25. In the first of these cases, it appears, Parker bought slaves from McKelvain; in part payment he executed to McKelvain his note for "$300.00 in cattle" and "transferred and sold" to McKelvain two notes theretofore made by Wood; in connection with the transaction he executed to McKelvain a paper reciting the facts already stated and "binding" him "that the said Wood shall well and truly pay the said sum" of the notes transferred; McKelvain brought suit on the "contract" evidenced by the paper just mentioned (and not on the notes)— alleging it to be a mortgage and asking foreclosure; demurrer to the petition was sustained; by amendment it was made to appear that the Wood notes "not being paid were returned to defendant and were then in suit by him," and a demurrer to the petition as amended was overruled. The statutes now in question were not then in force (being first enacted in 1858), and the fact that the instrument was set up and treated as a mortgage and the fact that Parker took back the Woods notes and himself undertook the collection of them is sufficient to demonstrate that McKelvain's suit was in reality and upon the original contract of purchase and sale and after conventional rescission of the transfer of the Wood notes.

The obligation involved in Tobin Canning Co. v. Fraser was in these words:

"We, the undersigned, agree to guarantee and become liable upon the within note for $800"—endorsed upon a note originally executed by third parties. No question arose in the case concerning the mean-

ing, etc., of the statutes now before us. True, it was held the so-called "guaranty" was "absolute," but the language used to evidence the obligation was broader than such as is appropriate to statement of a true "guaranty" and the question to which that holding relates was discharge or not of the "guarantor," so-called, by laches of the obligee.

Our attention has been directed also to opinions by various of the Courts of Civil Appeals in McCormick, etc., Co. v. Millett, 29 S. W., 80; Shropshire v. Smith, 37 S. W., 174, 470; Tilt-Kenney Shoe Co. v. Haggarty, 43 Texas Civ. App., 335, 114 S. W., 386; Hulme v. Levis, 149 S. W., 781; Grant v. Alfalfa Lbr. Co., 177 S. W., 536; Slaughter v. Morton, 185 S. W., 905; El Paso, etc., Co. v. First State Bank, 202 S. W., 522; Smith v. Cummer, etc., Co., 223 S. W., 338; First State Bank of Windom v. McElwrath, 266 S. W., 837; Phillips v. Chapman, 288 S. W., 1100; Ganado Land Co. v. Smith, 290 S. W., 920, and Austin v. Guaranty State Bank of Copperas Cove, 300 S. W., 129.

The obligation in McCormick, etc., Co. v. Millett was this:

"For value received I hereby agree to pay each of the following five notes within sixty days from maturity of same in case the makers of said notes fail to meet them at maturity."

Suit was brought against the maker and the so-called "guarantor" of three of the notes. It appeared the maker was a non-resident (a specific exception made in Art. 1843) and the suit was dismissed as to him. The question presented there was asserted discharge by lack of diligence. The "principal obligors" (Hulme and wife) were joined with the so-called "guarantor" in the case reported as "Hulme v. Levis," and hence, the suit was begun( jurisdiction acquired) in strict conformity with the words of Arts. 6336, 6337 and 1842; plaintiff took non-suit as to Hulme and wife and to this, so far as appears, objection was not made; Hulme and wife, for aught shown, may have been notoriously insolvent or otherwise within the exceptions made in Art. 1843, and, if so, jurisdiction existed to render judgment in observance of Arts. 1842 and 6336–6337. It is to be noted, too, that while the court said that Clayton's undertaking made him "more than a mere guarantor and primarily liable," it was clearly recognized that his obligation was to "answer for the debt, default or miscarriage of another," for the plea of the statute of frauds was overruled on the ground that the contract was in writing. The asserted right of "notice of acceptance of the guaranty," notice of default and diligence by the creditor make up the subject matter of

the discussion in Tilt-Kenney Shoe Co. v. Haggarty, supposed to be relevant here. Petitions for writs of error were not filed in these cases (i. e. McCormick, etc., Co. v. Millett; Hulme v. Levis; and Tilt-Kenney Shoe Co. v. Haggarty).

In the opinions in Shropshire v. Smith (37 S. W., 174, 470), El Paso, etc., Co. v. First State Bank (202 S. W., 522), and Smith v. Cummer, etc., Co. (223 S. W., 338), references are to be found to the statutes now in question. Shropshire v. Smith exhibits a promise to pay the "balance" (of certain accrued interest) on a certain day, "if not paid" by others, made in return for a promise (carired out) to stop a trustee's sale (already in progress) on default of a third party; that is to say, the creditor had already begun proceedings against the original debtor when the promise was made by one theretofore a stranger and acted upon by the creditor; this was held to be an "independent" contract so as to make Arts. 1204 and 3818, R. S., 1895 (Arts. 1842 and 6336, R. S., 1911), inapplicable. The promise sued upon in El Paso, etc., Co. v. First State Bank was alleged and held to be "an absolute and unconditional agreement to pay" as distinguished from a "guaranty"; the defense sought to be made and which was held inappropriate rested upon a pre-supposition that the original debtor (so-called) never became liable; it is difficult to perceive how any question about applicability of the statutes got into the case, and the statement that the promise "is one outside of and not controlled by Arts. 1843 or 6336," while correct, appears to have the character of obiter. The question in Smith v. Cummer, etc., Co. was whether the petition "was subject to a general demurrer"; amongst other things, the petition included an averment that Smith, for a consideration, "unqualifiedly guaranteed the payment" of certain "accounts" for goods sold by him on commission "and directly assumed the collection thereof"; the petition (sequently, the judgment on it) was held good, and in the course of the opinion it was said that "it appears   *   *   *   that our courts have established the rule that the statutory provisions with respect to parties" (presumably, Arts. 1842, 1843, 6336 and 6337) "do not apply when the suit is upon an absolute guaranty, and not a conditional one"—citing Shropshire v. Smith; Slaughter v. Morton; El Paso, etc., Co. v. First State Bank; Tilt-Kenney Shoe Co. v. Haggarty, and Tobin Canning Co. v. Fraser. But Smith, on the pleading, was much more than a guarantor; he had assumed collection of the debts for the creditor and his pay (for selling, collection, etc.) was conditioned upon performance of that duty. Petitions for writs of

error were not filed in these cases—i. e. Shropshire v. Smith; El Paso, etc., Co. v. First State Bank, and Smith v. Cummer, etc., Co.

Rawlings executed to a bank a "vendor's lien note"; the bank assigned the note to Slaughter; Slaughter, before maturity, "sold and transferred" the note to Morton with the endorsement "we guarantee payment." Morton sued Slaughter—alleging insolvency of Rawlings. Upon appeal, Slaughter urged that his exception to the pleading of insolvency, etc., should have been sustained and that the evidence was insufficient to show the insolvency alleged. These contentions were overruled—the rulings being placed largely upon the proposition that Slaughter's liability was primary and independent —i. e. he was an "absolute guarantor"—making the question of Rawlings' insolvency immaterial. Writ of error was applied for, and the petition was denied by the Commission of Judges. The pleading may well have been regarded as good and the evidence sufficient to raise an issue about Rawlings' insolvency and this, in turn, may have been the reason for denial of the petition in error.

In First State Bank of Windom v. McElwrath there arose a question of the enforcibility, or not (in view of the statute of frauds), of a parol "guaranty" of a "vendor's lien note" executed by a third party and sold by the bank to McElwrath. It was held that there was but a sale of property for an agreed price then paid with warranty by the seller that it would return the purchase money if the property be rendered defective by default of the original maker of the note, and, hence, that the bank's obligation was to make its own promise good instead of answering for the debt, default or miscarriage of another. See also Hubb Diggs Co. v. Fort Worth State Bank, Texas Comm. App.), 298 S. W., 419; Swenson v. Stoltz, 36 Wash., 318, 78 Pac., 999, 2 Ann. Cas., 504; 3 R. C. L., 1160. The notes of third persons transferred become matters "incidental and collateral * * * to the agreement sued upon." The fact that such an agreement lies without the statute of frauds demonstrates that it is not a "guaranty" in any true sense.

The suit given disposition in Grant v. Alfalfa Lbr. Co. was brought by a materialman against a building contractor and the owner of the premises et al., upon an open account "verified * * * as representing the cost of material furnished." It was made to appear that the contractor, before completion, abandoned the work and the owner "assumed control of the building in its unfinished condition." At that point, the materialman threatened suit against the owner for materials already furnished on a claim that he had

wrongfully paid over moneys to the contractor which ought have been retained for protection of others; in return for forbearance of suit, the owner promised to pay the account. The statute of frauds was not pleaded, and the discussion to which we have been cited relates to an assignment that the trial court erred "in rendering judgment for the full amount of the claim sued upon because the uncontroverted evidence shows that material to the value of $300.00 included in said account did not go into the building." The contractor (Grant's "principal"), it will be noted, was a party to the suit and, presumably, judgment went against him in proper amount. Writ of error was applied for and denied, but what has been said indicates lack of reason for saying the Supreme Court, in denying the writ, approved anything said in the opinion which may be thought to bear upon the questions here.

In Phillips v. Chapman a judgment was reversed and the cause was remanded upon grounds foreign to any question about the applicability or effect of Arts. 1842, 1843, 6336 and 6337. That fact makes obiter whatever was said touching any matter now in question. Too—that part of the opinion to which we are referred is based upon a holding that the contract then being considered bound the obligors to pay "irrespective of the liability of the maker of the note"; that ruling put the contract beyond the field of "guaranty."

The original maker of the note ("principal") was joined and judgment was rendered against him in Ganado Land Co. v. Smith. The "guarantor" (so-called) had expressly waived "demand, protest and notice of non-payment" originally, and so far as shown he had not made the demand for suit provided for in Arts. 6329 and 6330, R. S., 1911 (Arts. 6244 and 6245, R. S., 1925); his contention of release by failure of suit at first or second term of the court was overruled. His claim of release, in equity, by reason of depreciation, etc., of other security for the debt was rejected on the facts shown in evidence. This is sufficient to indicate that no question like that here was involved in that case.

The discussion in Austin v. Guaranty State Bank of Copperas Cove has general relation to the liability of "guarantors" and has no reference to rights given in Arts. 1842, 1843, 6336, and 6337.

It is noticeable, generally, that each supposed precedent relied upon by appellee rests upon a pre-supposition of absence of the true relation of principal and guarantor and the presence of something different but misnamed "guaranty."

We do not find in any case presented, or with which we are otherwise familiar, warrant for denying to a "guarantor" (such as Wood) the substantial benefits given in the words of the statute and with reference to which the parties made their contract.

Accordingly, we recommend that the questions certified be answered "Yes."

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

*Thos. B. Greenwood,* Associate Justice.
*William Pierson,* Associate Justice.