Walter G. COOK, Appellant,

v.

CITIZENS NATIONAL BANK OF BEAUMONT, Appellee.

No. 7845.

Court of Civil Appeals of Texas, Beaumont.

June 10, 1976.

---

Timothy E. Thompson, Fort Worth, for appellant.

Bill R. Bludsworth, Houston, for appellee.

KEITH, Justice.

Citizens National Bank of Beaumont brought this suit against the Zobo Corporation as maker of a note and Walter Cook and Patrick Morgan as guarantors on the note. Plaintiff alleged that the note was in default and sought payment for the balance due. Zobo Corporation filed a plea in abatement on the basis that it had filed for an "Arrangement" under Chapter XI of the Bankruptcy Act. The "arrangement" is still pending in federal court and no final decree has yet been entered.

Plaintiff Bank then moved to sever the action against Zobo from Cook and Morgan, which motion was objected to by Cook on the grounds that trial could not proceed without joinder of the original maker of the note. The trial court severed the action against Zobo and proceeded with the cause against Cook and Morgan. The lower court then rendered summary judgment against Cook and Morgan, jointly and severally, for the balance due on the note. It is from this order of severance and summary judgment that the defendant Cook, but not Morgan, appeals. We reverse the judgment of the trial court and remand the cause for retrial.

We will refer to the parties as they were in the lower court.

The guaranty agreement provides in relevant part:

"Whenever any indebtedness guaranteed hereunder shall become due and remain unpaid, the Guarantors, jointly and severally, will, on demand, and without further notice of dishonor . . . or of Borrower's default, pay the amount due thereon to the Bank, . . . such payment to be applied to the indebtedness of the Borrower ·. . . and it shall not be necessary for the bank . . to first institute suit or exhaust its remedies against the Borrower . . . .

". . . Guarantors hereby waive presentment for payment, notice of nonpayment, protest and notice thereof and diligence in bringing suit against Borrower . . . . It is agreed that the liability of each of the Guarantors for the payment of the indebtedness shall be primary and not secondary, and that suit may be brought against the Guarantors, jointly and severally, and against any one or more of them, less than all, without impairing the rights of the Bank against the other Guarantors . . . .

". . . The liability of any Guarantor shall not be impaired, reduced or affected by the fact that the indebtedness at any time exceeds the amount above specified as the extent of Guarantor's liability . . . or by the death, insolvency, bankruptcy, incapacity or disability . . . of Borrower or of any other Guarantor whether now existing or hereafter occurring."

Defendant's first point of error is that the trial court erred in granting the severance between himself and the original borrower, Zobo Corporation, because Tex.R. Civ.P. 31 requires joinder of the first obligor before a guarantor can be sued on the debt. It is plaintiff's position that Rule 31 and related statutes do not apply when a guarantor has become primarily liable by contract on the debt. It asserts that defendant has become primarily liable because

of the language in the guarantee agreement.

Tex.R.Civ.P. 31 states that "[n]o surety shall be sued unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in cases otherwise provided for in the law and these rules." Other laws which govern guaranty cases include Tex.Rev.Civ. Stat.Ann. art. 1986 and art. 1987 (1964).

*Art. 1986* provides:

"The acceptor of a bill of exchange, or a principal obligor in a contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against a party not primarily liable on such bill or other contract, unless judgment be also rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided."

*Art. 1987* states:

"The assignor, indorser, guarantor and surety upon a contract, and the drawer of a bill which has been accepted, may be sued without suing the maker, acceptor or other principal obligor, when the principal obligor resides beyond the limits of the State, or where he cannot be reached by the ordinary process of the law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent."

■ We first begin with the proposition that a guaranty is " 'an undertaking by one person to be answerable for the payment of some debt or the performance of some contract or duty by another person, *who himself remains liable.*' " *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748, 749 (1928) (emphasis supplied); *Coleman Furniture Corporation v. Lieurance*, 405 S.W.2d 646, 647 (Tex.Civ.App.—Amarillo 1966, writ ref'd n. r. e.). While there is a notable distinction between a guarantor and a surety,[1] this distinction becomes blurred almost to the point of nonexistence when the guar-

---

1. See 27 Tex.Jur.2d Guaranty § 15 (1961 and 1975 Supp.) and cases cited therein.

antor becomes primarily liable for the debt. *Finger Contract Supply Company v. Webb*, 438 S.W.2d 112, 114 (Tex.Civ.App.—Houston [14th] 1969), rev'd on other grounds, 447 S.W.2d 906 (Tex.1969); 53 A.L.R.2d 522, 525 (1957) and cases therein; see also Tex.Bus. & Comm.Code Ann. § 34.01 (1968).

■■■ Irrespective of nomenclature, one looks to the nature of the obligation to determine the classification of resulting rights and duties of the parties. *Wood v. Canfield Paper Co.*, supra (5 S.W.2d at 750); *Diamond Paint Company of Houston v. Embry*, 525 S.W.2d 529, 532 (Tex.Civ.App.—Houston [14th] 1975, writ ref'd n. r. e.). All language of a guaranty agreement is to be given effect when possible, and all rights thereunder are to be determined by the language of the contract. *Mid-States General Agency, Inc. v. Bank of Texas*, 450 S.W.2d 428, 431 (Tex.Civ.App.—Houston [1st] 1970, writ ref'd n. r. e.).

But construction of the above statutes, rules and principles has not produced uniformity of judicial decisions in this State. Based upon the principle that contract language is to be given primary effect as far as possible, several cases have enunciated the rule, with minor variations in phraseology, that a guarantor who unconditionally guarantees payment on a debt becomes a primary obligor and may be held liable without joinder of the original borrower. See, e. g., *Rice v. Travelers Express Co.*, 407 S.W.2d 534 (Tex.Civ.App.—Houston 1966, no writ); *McGhee v. Wynnewood State Bank*, 297 S.W.2d 876 (Tex.Civ.App.—Dallas 1956, writ ref'd n. r. e.);[2] *Mid-States General Agency, Inc. v. Bank of Texas*, supra; *Finger Supply Contract Company v. Webb*, supra; and *Skyline Furniture, Inc. v. Gifford*, 433 S.W.2d 950 (Tex.Civ.App.—El Paso 1968, no writ).

But a different conclusion was reached in the dominant case in this area, and the only Supreme Court case which we have found—

*Wood v. Canfield Paper Co.*, supra (5 S.W.2d 748). There, the paper company instituted suit against Wood, the guarantor of a loan which the paper company had made to another corporation—the original borrower not being made a party to the suit. Wood had unconditionally guaranteed the note up to the limits of the amount borrowed. Wood demurred to the pleadings on the basis that the initial borrower should be made a party to the suit; the demurrer being overruled by the trial court. In certifying the correctness of this action to the Supreme Court, the Court of Civil Appeals noted that there was no excuse offered as to why the original borrower was not made a party nor was there an allegation that a judgment had first been obtained against it (as required in what is now Tex.R.Civ.P. 31).

The Court discussed in detail the statutes involved [3] which are also before this court. In certifying the question, the Court of Civil Appeals said that " 'the statutes are plain and unambiguous, *applying to guarantors generally without any distinction between absolute and conditional guarantors*. In other words, since the statutes seem to us plainly to refer to all contracts of guaranty alike without any distinction between absolute and conditional guaranties, we are inclined to the opinion that the *courts are not warranted in reading into them, as it were, the distinction made by the decisions . . . .*' " *Wood v. Canfield Paper Co.*, supra (5 S.W.2d at 749, emphasis supplied). The Supreme Court recognized the plain terms of the statutes as stated by the intermediate court and held that "[w]e do not find in any case presented, or with which we are otherwise familiar, warrant for denying to a 'guarantor' (such as Wood) the substantial benefits given in the words of the statute [meaning the present art. 1987] . . . ." *Id.* at 753. In referring to art. 6336 (now Rule 31), the Court said that:

---

2. These are the only two cases cited by the plaintiff to support its position.

3. The numbering of the statutes in *Wood* has been changed: Art. 6336 became art. 6251 and eventually was made Tex.R.Civ.P. 31. Art.

6337 became art. 6252 and is now Tex.Bus. & Comm.Code § 34.01 (which now incorporates definitional changes). Art. 1842 is presently art. 1986, while art. 1843 has become art. 1987.

"The Legislature had the right thus to ignore distinctions in fact and to rest the procedural statute upon arbitrary selection. That situation renders unimportant, so far as the present case is concerned, most of the discussion to be found in text-books and opinions classifying guarantors into those who are such 'absolutely' and those who are such 'conditionally.'" Id. at 750.

See also, 27 Tex.Jur.2d Guaranty §§ 61–62 (1961 and 1975 Supp.).

The Court then ruled that the trial court should have sustained the defendant's demurrer and joined the original borrower in the suit regardless of whether he was an absolute or conditional guarantor. This holding has continuing vitality. We have found no subsequent Supreme Court opinion which is in conflict with, or has modified, the holding in Wood v. Canfield Paper Co., supra.[4] It is worthy of notation that none of the cases cited to support plaintiff's position discussed Wood. Regardless of the isolation which has been accorded Wood, these cases also appear distinguishable from the Wood decision and the case at bar.

In Mid-States General Agency, Inc. v. Bank of Texas, supra, 450 S.W.2d 428, the court apparently placed primary reliance upon the wording of the guaranty agreement. But the suit was filed jointly against the guarantor and the original borrower. There was no severance of these defendants, and there is no indication from the opinion that the statutes now before us were injected into the case. In Rice v. Travelers Express Co., supra (407 S.W.2d 534), the court held that the lender did not have to show that the debt could not be collected from the original obligor before suing the guarantor alone. But there, the guarantors were the sole owners of the corporation which made the original loan—thus there was no issue of the rights of a

"third party" as in our case. And, again, there was no issue of severance by the trial court nor were the statutes relating to this specific question made an issue, as far as can be determined from the opinion.

McGhee v. Wynnewood State Bank, supra (297 S.W.2d 876), makes clear that the original borrower had already defaulted when the suit was brought against the guarantor. But the important distinction is that the case involved one of the exceptions enumerated in art. 1987, i. e., that one of the parties could not be located "by the use of reasonable diligence." That court further seemed to recognize the mandate of art. 1987 when it said: "Art. 1987, Vernon's Ann.Civ.St. required that the principal obligor be joined as a party to this suit. Such statute, however, does not require that judgment be recovered against the primary or principal obligor." Id. at 883 (emphasis supplied). We agree that a judgment does not have to be rendered against the primary borrower prior to recovery from the guarantor, but this does not mean that the borrower does not have to at least be made a party to the suit against the guarantor within the contemplation of the statutes.

In the two remaining cases, Skyline Furniture, Inc. v. Gifford, supra (433 S.W.2d 950), and Finger Contract Supply Company v. Webb, supra (438 S.W.2d 112), there again is no discussion of Wood v. Canfield Paper Co., supra, nor of the applicable statutes. We cannot speculate as to what effect, if any, the injection of these elements would have had on those cases. Both cases merely restated the rule that the guarantor was primarily liable for the debt and could be sued by himself without any elucidation thereon.

The above cases have placed primary reliance upon the decisions of Cullum v. Commercial Credit Co., 134 S.W.2d 822 (Tex.Civ.

4. We adhere to the admonition expressed several years ago by Justice Norvell: "[T]hese cases have never been overruled, but likewise they have not been cited in recent years. Because of this latter circumstance, the Court of Civil Appeals was of the opinion that these ancient cases, like old soldiers, had just faded away. Perhaps a reexamination of the holdings of the cases mentioned is called for, but [the cases] are decisions of this Court and unless there is some good reason for overruling them, they should not be disregarded." Reed v. Buck, 370 S.W.2d 867, 870–871 (Tex.1963).

App.—Amarillo 1939, no writ), and *Ganado Land Co. v. Smith*, 290 S.W. 920 (Tex.Civ. App.—Galveston 1927, writ ref'd). *Smith* certainly should not be dispositive since it was rendered a year before the *Wood* case and it involved a borrower who had been adjudged a bankrupt—which differs significantly from our case. Further, there is no indication from the opinion that this was in the context of one of the exceptions to art. 1987, i. e., "actually or notoriously insolvent." Neither was mention made of Tex. R.Civ.P. 31 (then art. 6336). *Cullum* held that the guaranty was unconditional and that according to the terms of the original note, the guarantor was bound on the debt when the borrower defaulted. There was no issue of severance and no discussion of the statutes or *Wood*.

As noted earlier, *Wood v. Canfield Paper Co.*, supra, has seldom been cited since its inception in 1928, but it was discussed in *Moore v. Downie Bros. Circus*, 164 S.W.2d 420 (Tex.Civ.App.—Fort Worth 1942, no writ). There, the guarantor was sued without joinder of the principal obligor (although both entities were partners and brothers in the circus adventure). In ruling on this specific point, the court distinguished the facts of *Wood* and noted that the guaranty in *Wood* involved a party who was guaranteeing payment by a third party, much like the case at bar. It recited the rules and statutes, which have been previously mentioned, and ruled against the defendant's position, saying that the written contract of guaranty was pleaded and introduced and that it contained language that the guarantor could be sued without recourse to the principal borrower. But, as if the court were unsure of this result (e. g., "If we correctly understand that opinion [Wood] . . . " *Id.* at 422), the court further stated that the principal obligor came within an exception to art. 1987 since he could not be located and was presumably a resident of another state. *Id.* at 423. It is noted here that the case has a no writ history.

■ While the obligations of parties are to be determined from the language of a contract, we cannot ignore the principle that the contract itself may not impair the validity or force of any law and the courts will not assist in the enforcement of such a contract. *Woolsey v. Panhandle Refining Co.*, 131 Tex. 449, 116 S.W.2d 675, 678 (1938); *Morrison v. City of Fort Worth*, 138 Tex. 10, 155 S.W.2d 908, 909 (1941).

■ It is concluded that while there are cases to the contrary, *Wood v. Canfield Paper Co.*, supra, remains dispositive on the question of whether the joinder of the principal borrower is necessary before suit can be brought solely against the guarantor and that *Wood* answers the question in the affirmative.

■ Plaintiff alternatively asserts that if joinder is required, then an exception exists under art. 1987, i. e., that Zobo Corporation is "actually or notoriously insolvent." Prior to the filing of this lawsuit, the corporation filed in federal court for an "arrangement" under Chapter XI of the Bankruptcy Act, *11 U.S.C.A. §§ 701–799 (1970)*. In its petition Zobo alleged only inability "to pay its debts as they mature." This is the alternative basis for a Chapter XI proceeding—the other being "insolvent." 11 U.S.C.A. § 723 (1970). Under its Chapter XI exhibits, Zobo's financial data shows it to have total assets of $4,600,147.13 and total liabilities of $2,029,400.69.

A person or other entity is insolvent if "the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts." 11 U.S.C.A. § 1(19) (1970); *Farmers Bank of Clinton, Missouri v. Julian*, 383 F.2d 314 (8th Cir. 1967); *Arst v. First National Bank and Trust Co. of Salina*, 211 Kan. 758, 508 P.2d 520 (1973).

We note here that Zobo is a "debtor in possession" and thus entitled to run its business as usual under court supervision. See 11 U.S.C.A. § 742 (1970). The bankruptcy court has enjoined further action by a creditor, etc., until a final determination has been made by that court. But it is questionable whether this prevents a party from being made a party to a suit. It has been

held that being a "debtor in possession" under Chapter XI does not preclude a party from bringing a suit against a corporation alleging breach of contract, and seeking damages thereunder. See, e. g., *Zeidler v. Astrosystems, Inc.*, 39 A.D.2d 740, 331 N.Y. S.2d 985, 987 (1972). "The filing of an arrangement petition under Chapter XI does not divest the debtor in possession of its contractual rights, but it likewise does not provide a blanket exemption from contractual obligations." *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 177 (5th Cir. 1972).

Thus we are not concerned here with an entity which has been *adjudged* a bankrupt under some other applicable sections of the Bankruptcy Act. See, e. g., *Spillyards v. Ferris Brick Company*, 390 S.W.2d 837 (Tex. Civ.App.—Waco 1965, no writ), and *Young v. J. F. Zimmerman & Sons, Inc.*, 434 S.W.2d 926 (Tex.Civ.App.—Waco 1968, writ dism'd).

The fact that a corporation may have difficulty in paying its financial obligations does not relieve it from its liabilities nor prevent it from being sued. In construing the term "insolvency" within the meaning of what is now art. 1987, the Supreme Court of this State has said:

"  .   .   Hence we think that it cannot be said that a principal is insolvent, within the meaning of that statute [now art. 1987], when any part of the debt can be made by execution against him. Such is the construction given to similar statutes by other courts. . . . When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note, although he might have ample property to satisfy an execution against him. . . It cannot be said that a debtor is insolvent, within the meaning of our law, as to his creditor, when he holds property against which the creditor may enforce a lien for the payment of the debt." *Smith*

*v. Ojerholm*, 93 Tex. 35, 53 S.W. 341, 341–342 (1899).

Accord, see *Texas Baptist University v. Patton*, 145 S.W. 1063 (Tex.Civ.App.—Dallas 1912, no writ).

Under the record which we review, we hold that Zobo Corporation was not "actually or notoriously insolvent" within the meaning of art. 1987. With assets almost twice as large as its liabilities, it should not be insulated against being made a party to a suit to enforce an obligation which it originally incurred voluntarily. Defendant's Point of Error No. 1 is sustained.

Having found reversible error, we find it unnecessary to consider the remaining point of error asserted by defendant.

The judgment of the trial court is REVERSED and the cause is REMANDED to that court for a new trial.

REVERSED and REMANDED.

STEPHENSON, J., not participating.