

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00289-CV

WELLS FARGO BANK, N.A. F/K/A
WELLS FARGO BANK MINNESOTA,
N.A., AS TRUSTEE FOR THE
REGISTERED HOLDERS OF J.P.
MORGAN CHASE COMMERCIAL
MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGES PASS-
THROUGH CERTIFICATES, SERIES
2003-PMI, ACTING BY AND THROUGH
ORIX CAPITAL MARKETS, LLC

APPELLANT

V.

MBS - THE HILLS, LTD., 3101 W.
NORMANDALE, L.L.C., MICHAEL B.
SMUCK, AND EDWIN A. WHITE

APPELLEES

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION
## ON EN BANC CONSIDERATION[1]

----------

[1]*See* Tex. R. App. P. 47.4.

Appellant Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgages Pass-Through Certificates, Series 2003-PMI, acting by and through ORIX Capital Markets, LLC (collectively Wells Fargo) filed a motion for en banc consideration of our opinion and judgment issued December 8, 2011. We deny the motion, but we withdraw our prior opinion and judgment and substitute the following.

## I. INTRODUCTION

In two issues, Wells Fargo argues that the trial court erred by interpreting a nonrecourse indemnification agreement as an agreement only to indemnify the noteholder against third-party claims and erred by entering judgment that Wells Fargo take nothing as to its claims against Appellees Michael B. Smuck and Edwin A. White. We will affirm.

## II. BACKGROUND

White and Smuck formed MBS - The Hills, Ltd. as a special purpose entity to borrow funds and to purchase and hold title to an apartment property known as "The Hills." Smuck served as director of 3101 W. Normandale, L.L.C., the general partner of MBS - The Hills. MBS - The Hills borrowed $6.8 million through nonrecourse financing, securing the promissory note with the apartment property.[2] The note limited MBS - The Hills's liability to the property pledged as

---

[2]The loan was originally obtained from PNC Bank, National Association, but it was later assigned to Wells Fargo.

collateral, but the note contained nonrecourse exceptions that would establish both MBS - The Hills and Normandale's liability under certain defined circumstances. Additionally, the lender required Smuck and White to execute a nonrecourse indemnification agreement, which is the subject of this appeal.

MBS - The Hills defaulted on the note, and Wells Fargo applied to the trial court to appoint a receiver to manage the property. Based on the receiver's assessment of the property, Wells Fargo sued MBS - The Hills and Normandale, seeking to establish their liability under the note's nonrecourse exceptions. Wells Fargo also sued Smuck and White, seeking to establish their personal liability under the nonrecourse indemnification agreement.

During discovery, Wells Fargo served MBS - The Hills and Normandale with requests for admissions. When MBS - The Hills and Normandale failed to respond to the requests for admissions, Wells Fargo moved for summary judgment against them based on the nonrecourse exceptions contained in the note, requesting that the trial court deem the requests for admissions admitted under rule of civil procedure 198.2.[3] The trial court granted an interlocutory summary judgment in favor of Wells Fargo and against MBS - The Hills and Normandale in the principal amount of $5,904,537.61 plus prejudgment interest. The dollar amount awarded by the interlocutory summary judgment tracked to the penny the principal amount due on the promissory note after the property

_____

[3]MBS - The Hills and Normandale were represented by counsel, but midway through the case, counsel withdrew. No substitute counsel appeared on their behalf regarding the summary judgment.

was foreclosed upon in December 2008, according to the affidavit of Charles Crouch.[4]

Wells Fargo proceeded to a bench trial on its remaining claims against Smuck and White. At trial, Wells Fargo offered ten exhibits to support its claims, the trial court admitted those exhibits, and Wells Fargo rested without calling any witnesses. The trial court entered a take-nothing judgment on Wells Fargo's claims against Smuck and White and the following findings of fact and conclusions of law:

> 5. Defendants MICHAEL B. SMUCK and EDWIN A. WHITE did not, by the *Non-Recourse Indemnification Agreement* of July 16, 2003, or any other instrument presented at trial, guaranty any liability of Defendants MBS—THE HILLS, LTD and/or 3101 W. NORMANDALE, L.L.C. The agreement was between the defendant individuals and Plaintiff to indemnify Plaintiff, not the defendant business entities, against certain potential liabilities. The indemnification agreement does not operate as a guaranty of any obligation of the defendant business entities, which were not party to the agreement.
>
> . . . .
>
> 6. At trial, Plaintiff introduced no evidence to establish any liability of either MICHAEL B. SMUCK or EDWIN A. WHITE. Therefore, Defendants MICHAEL B. SMUCK and EDWIN A. WHITE are not liable to Plaintiff for any damages sustained in connection with the note and attendant security documents.
>
> 7. Plaintiff provided no evidence at trial that the losses it sustained fall within any of the carve-out provisions of the promissory note, indemnification agreement, or other loan documents that would make either MICHAEL B. SMUCK or EDWIN

---

[4]Crouch is the Associate Director of ORIX Capital Markets, LLC, the special servicer for the $6.8 million loan transaction.

A. WHITE liable.  For that reason, MICHAEL B. SMUCK and EDWIN A. WHITE are not liable to it for damages that the plaintiff sustained.

Upon Wells Fargo's request, the trial court entered the following additional findings and conclusions regarding MBS -The Hills's and Normandale's liability:

1. On July 16, 2003, MBS-The Hills, Ltd. ("MBS-Hills" or "Borrower") executed a promissory note in favor of [Well Fargo's predecessor] evidencing a $6,800,000.00 loan to purchase the Hills Apartment Homes in Fort Worth, Texas . . . .  The parties agreed that the Note would be non-recourse as to the Borrower except and unless certain defined non-recourse exceptions, set forth in paragraph 12 of the Note, were satisfied.

2. Borrower and Normandale are jointly and severally liable under the Note by reason of and through the non-recourse liability exceptions of Paragraph 12 of the Note.  Wells Fargo is entitled to recover against Borrower and 3101 W. Normandale, LLC for their recourse liability under the Note.

## III.  STANDARD OF REVIEW

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer.  *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *Dominey v.*

5

*Unknown Heirs & Legal Reps. of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

## IV. CONSTRUCTION OF THE NONRECOURSE INDEMNIFICATION AGREEMENT

In its first issue, Wells Fargo argues that "the trial court's construction of the hold harmless agreement depends on characterizing the agreement as an agreement to indemnify Wells Fargo against third party liability rather than an agreement to guaranty [MBS - The Hills and Normandale's] personal liability under the Note's non-recourse exceptions." Wells Fargo cites *Joseph Thomas, Inc. v. Graham* for the proposition that we must characterize the nonrecourse indemnification agreement as a guaranty because it is "collateral and secondary to the principal contract that is guaranteed in the secondary contract." 842 S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ). Appellees argue that this is a "misreading of the case," and they instead cite *Graham* for the proposition that we must characterize the nonrecourse indemnification agreement as an agreement to indemnify because "a promise to protect the promisee is an indemnity contract." White focuses exclusively on the uses and variations of the term "indemnity" throughout the nonrecourse indemnification agreement to support his argument that "a sophisticated lender and servicer of commercial real estate property as well as the sole drafter of all the Loan Documents" should have drafted the nonrecourse agreement to be a "guaranty" if it intended the agreement to operate as a guaranty. Smuck contends that under *Graham*, the nonrecourse indemnification agreement does not operate as a guaranty against

6

him and White. According to Smuck, "*Graham* stands for the proposition that a promise to protect a third party is a guaranty, and a promise to protect the promisee is an indemnity contract." Wells Fargo, by assignment, is the promisee on the note.

Historically, an indemnification agreement is a promise "to safeguard or hold harmless the indemnitee against existing or future loss, liability, or both." *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). But "[m]agic is not the quality of nomenclature," and simply because a party calls himself a guarantor or an indemnitor "does not inevitably make him one." *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748, 750 (Tex. 1928) (citing *Davis v. Patrick*, 141 U.S. 479, 12 S. Ct. 58 (1891)). Instead, when construing promissory notes, we apply the rules of contract construction. *See Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. denied)).

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Courts should examine the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Contact terms are given their plain, ordinary, and generally accepted meanings

7

unless the contract itself shows them to be used in a technical or different sense. *Id.* "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served,' and when possible, we will avoid a construction that "is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We must look at all of the contract's parts together and be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

The financing granted to MBS - The Hills by Wells Fargo's predecessor-in-interest was nonrecourse. Thus, MBS - The Hills' liability—according to the note—was only extended "to the Mortgaged Property and other collateral given to secure the Debt, and Lender shall not enforce such liability against any other asset, property or funds of Borrower" except under six specified conditions immediately identified in subsections (a)–(f). After listing the six exceptions, the note states the following:

> Items (a) through (f) above are collectively the "Non-Recourse Exceptions". To the extent Borrower is a general partnership and Lender is required under applicable law to pursue its remedies against the persons or entities constituting Borrower, each reference to the phrase "(including Borrower)" in the Non-Recourse Exceptions shall be deemed to read "(including Borrower or any person or entity

8

constituting Borrower)". ***Borrower's liability under the Non-Recourse Exceptions . . . shall be limited to the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions.***[5] [Emphasis added.]

The particular business activity sought to be served here is nonrecourse, commercial financing, so we must construe the nonrecourse indemnification agreement in a reasonable and equitable manner in accordance with that purpose. The borrower in this case (MBS - The Hills) was a limited partnership, so only the general partner's liability was at risk. But the general partner (Normandale) was a limited liability corporation, so the entity "constituting Borrower" was another business entity with limited liability. Therefore, Wells Fargo's predecessor-in-interest had Smuck and White sign the nonrecourse indemnification agreement, seeking indemnification from Smuck and White if the nonrecourse exceptions under the note were triggered. Specifically, the nonrecourse indemnification agreement limits Smuck's and White's personal liability to that "which Borrower at any time may be personally liable pursuant to the non-recourse exceptions (as defined in paragraph 12 of the note)."

Accordingly, the note limits the lender's recourse to the collateral used to secure the debt, but under six circumstances, the lender has recourse against MBS - The Hills and Normandale for "the amount of any losses or damages sustained by Lender *in connection with such Non-Recourse Exceptions.*"

---

[5]Section 12(a) mirrors this language. It provides that Wells Fargo may "obtain personal, recourse judgments against any person or entity . . . relating to any losses sustained by [Wells Fargo] *in connection with any . . . waste.*" [Emphasis added.]

9

[Emphasis added.] This means that Wells Fargo may obtain a judgment against MBS‑The Hills and Normandale for damages resulting from, among other things, waste. The note *does not* give Wells Fargo *full recourse* against MBS‑The Hills and Normandale for the entire amount, if any, due and owing under the note in the event MBS‑The Hills and Normandale's liability is established under one or more of the nonrecourse exceptions. In other words, waste triggers liability for damages resulting from waste; waste does not trigger liability for damages equaling amounts remaining due and owing on the note.[6]

Wells Fargo contended in its interlocutory motion for summary judgment that the following two requests for admissions were deemed admitted as a matter of law against MBS‑The Hills and Normandale:

> 22. Borrower and Normandale are jointly and severally liable for the *full principal amount due on the Note*, plus any associated interest, cost and fees. . . .

> 23. Smuck and White are jointly and severally liable for the *full principal amount due on the Note*, plus any associated interest, cost and fees. . . . [Emphasis added.]

These requests for admissions misconstrue the terms of the note, which limits liability to damages resulting from, among other things, waste. To the extent that Wells Fargo argues that it is entitled to recover the full amount due and owing under the note as a result of these inaccurate admissions being deemed admitted as a matter of law, it is wrong—we fail to see how a deemed admission

---

[6]We also note that all parties to this out-of-the-ordinary loan transaction were represented by counsel. Certainly, the parties could have identified the indemnification agreement as a guaranty agreement if that was their intention.

can unilaterally modify the terms of a bargained-for agreement, the construction of which is a matter of law. *See Arthur J. Gallagher & Co. v. Dietrich*, 270 S.W.3d 695, 701–02 (Tex. App.—Dallas 2008, no pet.) (reasoning that contract modification must satisfy traditional requirements of a contract—a meeting of the minds supported by consideration); *Boulet v. State*, 189 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (reasoning that rule regarding requests for admissions does not contemplate or authorize admissions to questions involving points of law); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999) (reasoning that construction of unambiguous contract is question of law for court).

Considering the nonrecourse indemnification agreement's limiting of Smuck and White's personal liability to that "which Borrower at any time may be personally liable pursuant to the non-recourse exceptions," the nonrecourse indemnification agreement therefore gives Wells Fargo recourse against Smuck and White for "the amount of any losses or damages sustained by the lender *in connection with such Non-Recourse Exceptions.*" [Emphasis added.] As with MBS - The Hills under the note, the nonrecourse indemnification agreement does not give Wells Fargo full recourse against Smuck and White for the entire amount, if any, due and owing under the note in the event MBS - The Hills and Normandale's liability is triggered under one or more of the nonrecourse exceptions.

11

We hold that the evidence supports the trial court's "finding" that the nonrecourse indemnification agreement did not operate as a guaranty of any obligation of MBS‑The Hills and Normandale. We overrule Wells Fargo's first issue.

## V. PERSONAL LIABILITY OF SMUCK AND WHITE

In its second issue, Wells Fargo argues that Smuck and White's personal liability is conditioned on the liability of MBS‑The Hills and Normandale, so by establishing MBS‑The Hills and Normandale's liability via the interlocutory motion for summary judgment, Wells Fargo established Smuck and White's personal liability. Because Smuck and White's personal liability is commensurate with the liability of MBS‑The Hills and Normandale under the nonrecourse exceptions, we must review Wells Fargo's motion for interlocutory summary judgment to determine whether it indeed sought to establish MBS‑The Hills and Normandale's liability under one or more of the note's nonrecourse exceptions.

Wells Fargo made the following relevant statements in its motion for interlocutory summary judgment against MBS‑The Hills and Normandale:

• "This Motion establishes as a matter of law that the Defendants are jointly and severally liable *for the balance due on a promissory note . . . .*" [Emphasis added.]

• "The Defendants' failure to respond to Wells Fargo's Requests for Admissions results in those matters being deemed admitted as a matter of law.

• "Wells Fargo has satisfied all the elements *for recovery on the Note.*" [Emphasis added.]

• "Although Wells Fargo meets the elements *for recovery under a promissory note* as detailed above, the obligations of MBS-Hills and Normandale are generally

12

non-recourse *unless certain exceptions exist.  Exceptions do exist*[, including waste and impairment of Plaintiff's right to foreclose on the property.]"  [Emphasis added.]

• "The Defendants' commission of waste on the Property *triggers full recourse liability.*"  [Emphasis added.]

• "The Defendants' allowing liens to remain on the Property impaired Wells Fargo's right to foreclose and *triggers [full] recourse liability.*"  [Emphasis added.]

Additionally, Wells Fargo attached the affidavit of Charles Crouch to the motion. In the affidavit, Crouch testified that "[t]he property was foreclosed upon on December 2, 2008, leaving a deficiency amount in excess of $5,904,537.61." Wells Fargo did not attach to the motion any evidence of damages for waste or for impairment of its right to foreclose the property.  The trial court awarded Wells Fargo $5,904,537.61, an amount identical to the deficiency owed on the note, excluding interest, as of the December 2008 foreclosure.  At the final trial on Wells Fargo's claims against Smuck and White, Wells Fargo offered several exhibits into evidence, including the note and the nonrecourse indemnification agreement, and rested.  It did not offer any testimony or evidence of any amounts of damages resulting from waste.

A review of the entire motion for interlocutory summary judgment thus reveals that Wells Fargo did not move for summary judgment to recover damages for waste or for impairment of its right to foreclose on the property. Instead, Wells Fargo (inconsistent with the terms of the note) argued that because MBS - The Hills and Normandale had committed waste or impaired Wells Fargo's right to foreclose on the property, it was therefore entitled to

13

recover the full balance due on the note. Those are two separate grounds for summary judgment—the former seeks to recover damages for waste or foreclosure impairment while the latter relies upon waste or foreclosure impairment to justify recovering the balance due on the note. The difference is significant because the former implicates White and Smuck's personal liability under the nonrecourse indemnification agreement, but the latter does not.

This court has recently issued two other opinions involving White and similar notes and nonrecourse indemnification agreements. In *White v. MLMT 2004-BPC1 Carlyle Crossing, LLC*, the appellee sued MBS - Carlyle Crossing, Smuck, and White under a $5.5 million promissory note and a nonrecourse indemnification agreement. No. 02-10-00233-CV, 2011 WL 3672022, at *1 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.). The trial court rendered a judgment in favor of MLMT for $1,766,355.52 for damages resulting from waste, and this court reviewed the legal and factual sufficiency of the evidence to support that award. *Id.* at *1–6. The noteholder there presented evidence and proved damages attributable to waste. *Id.* at *4.

In *White v. JPMC 2004-C3 Trails Apartments LLC*, JPMC sued MBS - The Trails, Smuck, White, and White's wife under a $3.7 million promissory note and a nonrecourse indemnification agreement for waste to an apartment complex property. No. 02-12-00164-CV, 2012 WL 6632776, at *1 (Tex. App.—Fort Worth Dec. 21, 2012, no pet.) (mem. op.). The trial court rendered judgment against MBS - The Trails, Smuck, and White for $1,507,506.59, and White appealed. *Id.*

14

In addressing White's argument involving the express negligence rule, this court observed that "White did not challenge any of the findings concerning waste and the damages related thereto. Because the record contains evidence to support all of these unchallenged findings, they are binding on this court." *Id.* at *2.

Thus, in both *MLMT* and *JPMC*, the appellees presented evidence and proved damages attributable to waste. Unlike in this case, neither appellee in those cases relied upon the borrowing entity's commission of waste to justify recovering the remaining balance of principal and interest due on the note.

In yet another recent case involving Wells Fargo, Smuck, White, and a similar financing arrangement, Wells Fargo obtained an interlocutory summary judgment against the borrowers but failed to prevail on its claims against Smuck and White under the indemnification agreement. *See Wells Fargo Bank, N.A. v. Smuck*, No. 14-12-00574-CV, 2013 WL 3422888, at *1–2 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet. h.). Although the court of appeals reversed the trial court's take-nothing judgment and rendered judgment in favor of Wells Fargo, it contrasted the facts of its case with those in our previous opinion issued in this cause. *Id.* at *10. The court specifically pointed out that unlike in our cause, the interlocutory summary judgment that Wells Fargo obtained in its case was for damages sustained in connection with the nonrecourse waste exception. *Id.* at *10–11. Thus, in making that observation, the court of appeals implicitly acknowledged that Wells Fargo would not have been entitled to recover under the indemnification agreement had the interlocutory summary judgment that it

15

obtained against the borrowers not sought to establish damages sustained in connection with the borrowers' waste. That is the precise point that we are attempting to convey here: Wells Fargo did not seek—and therefore did not obtain—a summary judgment on the ground that MBS - The Hills and Normandale were liable under one or more of the note's nonrecourse exceptions because Wells Fargo made absolutely no attempt to prove that it sustained damages in connection with waste. Wells Fargo instead proved that it sustained damages in connection with MBS - The Hills and Normandale's breach of the note.

We reject each of the dissent's contentions.

Accordingly, because Wells Fargo did not obtain an interlocutory summary judgment establishing that it had sustained damages in connection with the nonrecourse exceptions—specifically, for waste or for foreclosure impairment— Wells Fargo failed to demonstrate White and Smuck's personal liability. We overrule Wells Fargo's second issue.

## VI. CONCLUSION

Having overruled both of Wells Fargo's issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

GABRIEL, J. filed a dissenting opinion.

DELIVERED: August 8, 2013

17